**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| **JOEL MORANT,** | : | |
| **Plaintiff** | : | |
| | : | **No. 3:19-cv-1791  (VLB)** |
| **v.** | : | |
| | : | |
| **THOMAS W. HARKER** | : | **March 1, 2021** |
| **Secretary of the Navy,** | : | |
| **Defendant.** | : | |
| | : | |
| | : | |
| | : | |

**MEMORANDUM OF DECISION GRANTING [DKT. 38] PLAINTIFF'S MOTION FOR ATTORNEYS' FEES PURSUANT TO THE EQUAL ACCESS TO JUSTICE ACT**

Before the Court is Plaintiff Joel Morant's motion for attorneys' fees and expenses pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d) following the Court's decision granting the Acting Secretary of the Navy ("Defendant"), now  Thomas W. Harker's, consent motion for voluntary remand to the Board for Correction of Naval Records (the "Board" or "BCNR"). Plaintiff requests $34,926.26 in attorneys' fees and $43.04 in expenses. [Dkt. 38 (Pl. Mem in Supp.) at 1].[1] Defendant opposes the award of fees and expenses, arguing that Plaintiff is not entitled to such fees and expenses because: (i) Plaintiff is not a prevailing party under the EAJA; (ii) Defendant's position was substantially justified; and/or (iii) there are special circumstances that would make awarding EAJA fees unjust. [Dkt. 41 (Def. Mem. in Opp'n)]. For reasons stated below, the

---

[1] Plaintiff seeks an additional $2,786.67 in fees for the preparation of his reply brief to Defendant's opposition to his fee motion. [Dkt. 42 (Pl. Repl. Br.) at 10].

Court GRANTS Plaintiff's motion and awards $34,926.26 in attorneys' fees and $43.04 in expenses pursuant to the EAJA.

## Procedural Background

As the Court explained in its decision granting Defendant's motion for voluntary remand, Plaintiff is a combat veteran who was diagnosed with post-traumatic stress disorder ("PTSD") about twenty years after his discharge from the U.S. Marine Corps with an "Other Than Honorable" characterization of service. [Dkt. 36 (Mem. Order Granting Def. Mot. for Vol. Remand) at 2]. Recognizing that PTSD in combat veterans was historically misunderstood and underdiagnosed, then-Secretary of Defense Chuck Hagel issued a memorandum instructing the service branches to give "liberal" or "special" consideration when reviewing veterans' petitions to correct their military records. *Id.* at 2-3 (citing Memorandum from Chuck Hagel, Sec'y of Defense, to Secretaries of The Military Departments (Sept. 3, 2014), https://www.secnav.navy.mil/mra/bcnr/Documents/HagelMemo.pdf. ("Hagel Memo"). On July 12, 2016, Plaintiff filed a request with the Board to upgrade both his Character of Service and the narrative reason for separation. [Dkt. 1 (Compl.) ¶ 61].

While Plaintiff's request was pending review, the Department of Defense continued to promulgate guidance for implementing the Hagel Memo. As noted in the Defendant's motion for voluntary remand, on August 25, 2017, the Friday prior to Plaintiff's petition being presented to the Board, Undersecretary of Defense Anthony Kurta issued a memo that provided guidance clarifying and expanding upon the Hagel Memo. [Dkt. 34 (Def. Mot. for Vol. Remand) at 4].

The Kurta Memo provides four questions to guide the service branches when considering requests by veterans for modification of their discharges due in whole or in part to mental health conditions, including PTSD. The questions are:

a. Did the veteran have a condition or experience that may excuse or mitigate the discharge?
b. Did that condition exist/ experience occur during military service?
c. Does that condition or experience actually excuse or mitigate the discharge?
d. Does that condition or experience outweigh the discharge?

Memorandum from Anthony M. Kurta, Under Sec'y of Defense, to Secretaries of The Military Departments (Aug. 25, 2017), https://dod.defense.gov/Portals/1/Documents/pubs/Clarifying-Guidance-to-Military-Discharge-Review-Boards.pdf. ("Kurta Memo")

In opposition to Plaintiff's motion for attorneys' fees, Defendant filed the affidavit of Yaroslava Caldie, the case examiner who handled Plaintiff's file. [Dkt. 41-2 (Caldie Aff.)]. According to Ms. Caldie's affidavit, on August 1, 2017, Lt. Col. Reggie Yager provided training to the Board's members and staff at a training conference. *Id.* ¶¶ 3-5. The training addressed new guidance that was eventually promulgated by Under Secretary Kurta later that month. *Id.* Ms. Caldie's affidavit states that the Board began applying the guidance from Lt. Col. Yager's training prior to the formal implementation of the Kurta Memo. *Id.* ¶ 7. The Board learned that the Kurta Memo was formally implemented on the morning that it heard Plaintiff's petition, but Ms. Caldie's affidavit does not make clear whether the policy change was communicated before or after Plaintiff's petition was heard. *Id.* ¶¶ 6, 8-9. The affidavit states that "[n]either I nor the Board had access to the signed Kurta Memo while Plaintiff's case was being presented, considered, and adjudicated." *Id.* ¶ 10.

3

About a month later the Board received a supplemental letter from Plaintiff raising arguments related to the Kurta memo, but the Board did not reconvene before rendering its decision to grant Plaintiff partial relief, about a month later. *Id*. ¶¶ 10-12. In its written decision dated November 20, 2017, the Board found that a discharge upgrade was warranted based on Mr. Morant's PTSD. [Dkt. 1, Ex. A. (Board Decision) at 4]. Although the Board upgraded Mr. Morant's discharge from "Less Than Honorable" to "General," the Board declined to grant an "Honorable" discharge or amend the narrative and separation codes. *Id*. The Board reasoned that Mr. Morant's PTSD was a mitigating factor, but he nevertheless engaged in the misconduct, which was "varied in its nature and frequency." *Id*.

Plaintiff then sought judicial review of the Board's decision, arguing that it violated the Administrative Procedures Act, 5 U.S.C. § 706, and the Due Process Clause of the Fifth Amendment of the U.S. Constitution. [Dkt. 1 (Compl.)]. Plaintiff argued, *inter alia*, that the Board's "partial denial of Mr. Morant's discharge upgrade, due to the "varied nature and the frequency" of his misconduct is arbitrary, capricious, and an abuse of discretion because the panel substituted its own judgment for the mandatory guidance of the Kurta Memo that excusable misconduct can be varied and frequent. *Id*. ¶ 95. The complaint sought, in the alternative to affirmative relief, an order setting aside the partial discharge upgrade and remanding the case for further proceedings before the Board. *Id*. at 20.

After answering the complaint and filing the administrative record, Defendant conceded that there was a legal error in the Board's decision and sought voluntary remand. [Dkt. 34 (Def. Mem. for Vol. Remand)]. Defendant's motion states

that: "The agency has identified a discrepancy between the agency's written decision and the question whether the BCNR in fact applied the signed version of the Kurta Memo at the time it met and voted on Plaintiff's petition. The BCNR's failure to apply the final Kurta Memo is a legal error and is the basis on which the agency seeks remand of Plaintiff's petition to the BCNR." *Id*. at 1. Defendant conceded that the Board "…failed to apply the final Kurta Memo to Plaintiff's case due to the fact that the Board met to consider Plaintiff's petition on the business day following the signing of the Kurta Memo." *Id*. at 8. Defendant also argued that Plaintiff would benefit from additional administrative guidance promulgated after the Board's decision was rendered. *Id*. at 9. Defendant's motion argued that "the request [for voluntary remand] is made based on a confession of error" and sought an order from the Court granting remand and dismissing the action. *Id*. at 9-10.

The Court granted Defendant's motion in a memorandum order because the Defendant conceded the legal error early in the litigation, the Plaintiff consented to remand, and there was no evidence of bad faith. [Dkt. 36 (Mem. Order Granting Def. Mot. for Vol. Remand) at 2]. In accordance with the Defendant's request to dismiss the action, the Court entered judgment for the Plaintiff. [Dkt. 37 (Judgment)]. Thereafter, within thirty days of the judgment, Plaintiff filed his motion for attorneys' fees. See 28 U.S.C. § 2412(d)(1)(B).

<u>Discussion</u>

Pursuant to 28 U.S.C. § 2412(d)(1)(A), "[e]xcept as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to

subsection (a), incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." Thus, under the EAJA, "eligibility for a fee award in any civil action requires: (1) that the claimant be a 'prevailing party'; (2) that the Government's position was not 'substantially justified'; [and] (3) that no 'special circumstances make an award unjust.'" *Commissioner, INS v. Jean*, 496 U.S. 154, 158 (1990).

### A. Whether Plaintiff is a prevailing party.[2]

"A prevailing party is one that has "succeeded on any significant issue in litigation which achieved some of the benefit the part[y] sought in bringing suit," such that the party is able to "point to a resolution of the dispute which changes the legal relationship between itself and the [adversary]." *Kerin v. U.S. Postal Serv.*, 218 F.3d 185, 189, n. 1 (2d Cir. 2000)(quoting *Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 791–92 (1989)). Additionally, the legal change in the relationship between the parties must be judicially sanctioned rather than a voluntary change in the defendant's conduct. *Ma v. Chertoff*, 547 F.3d 342, 344 (2d Cir. 2008)(citing standard from *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598 (2001). "…[E]nforceable judgments on the merits and court-ordered consent decrees create the material alteration of the legal

---

[2] Plaintiff's affidavit in support of his motion to proceed *in forma pauperis* [Dkt. 2] demonstrates that his net worth does not exceed $2 million as required by the definition of the term "party" as defined by 28 U.S.C. § (d)(2)(b).

6

relationship of the parties necessary to permit an award of attorney's fees." *Buckhannon*, 532 U.S. at 604 (internal quotation and citations omitted).

Plaintiff argues that he is a prevailing party because the Defendant confessed error in response to Plaintiff's complaint, the Court granted the relief sought in the complaint, and the Court entered judgment for Plaintiff without retaining jurisdiction over the matter. [Pl. Mem. in Supp. at 3-5].

In opposition, Defendant argues that the Board did not fail to adhere to mandatory guidance because the Kurta Memo was not self-executing as it instructed the service secretaries to direct implementation and report on compliance. [Pl. Mem. in Opp'n at 11-12]. The opposition brief argues that "Defendant did not admit that the BCNR panel was obligated to apply the Kurta Memo when it considered Plaintiff's petition for relief." *Id*. at 12. This argument is meritless.

The Defendant's opposition brief and accompanying affidavit provides that the Board heard Plaintiff's petition among others between 9:00 A.M. and 12:00 P.M. on August 27th. [Caldie Aff. ¶ 6]. The Board's executive director emailed the panel to inform them of the Kurta Memo at 10:42 A.M., followed by an email to staff at 12:06 P.M. [Caldie Aff. ¶ 9]. Defendant's opposition brief states, in a footnote, that "[i]t is unknown whether the BCNR Panel considered and adjudicated Plaintiff's petition before or after the BCNR's Executive Director emailed the Board members directing them to ensure they adhere to the Kurta Memo." [Pl. Mem. in Opp'n at 12, n. 4]. Regardless, Ms. Caldie's affidavit provides that neither Ms. Caldie nor the

Board had access to the Kurta Memo when Plaintiff's petition was presented, considered, and adjudicated. [Caldie Aff. ¶ 10].

The Kurta Memo itself, signed before Plaintiff's case was heard, orders the Military Department Secretaries to *immediately* implement the guidance and report their status to Lt. Col. Yager within 45 days. Kurta Memo at 1. The memo is clear that it applies to the Board and that it applied to Plaintiff's case. Kurta Memo. ¶ 21. The Board's decision to grant Plaintiff partial relief acknowledged that the Kurta Memo applied to its decision. [Dkt. 1, Ex. A (Board Decision) at 4]. In short, Ms. Caldie's affidavit suggests that the Board applied some vague standard of what it anticipated the Kurta Memo to eventually require of them, failed to consider and apply the binding guidance, and then issued a  decision issued in November of 2017 erroneously or falsely stating the Kurta Memo was applied.

Furthermore, Defendant's argument regarding the applicability of the Kurta Memo is inconsistent with its position requesting voluntary remand. Defendant's motion stated "[a]s explained below, the Navy agrees that the BCNR's decision on Plaintiff's petition was subject to the "Kurta Memo," a policy guidance memorandum issued by the Department of Defense, based on the date that the BCNR considered Plaintiff's petition." [Dkt. 34 (Def. Mem. for Vol. Remand) at 1]. Defendant's motion was premised on their confession of a legal error. *Id.* at 9. Defendant's motion failed to distinguish between the "final" memo and what the Board may have relied upon in rendering its decision. The Court granted Defendant's motion relying on the legal and factual arguments it advanced concerning the admitted error in applying the Kurta Memo, which plainly means

the document executed by the Under Secretary on August 25, 2017. This admission has a legal consequence.

Defendant is judicially estopped from arguing that it was not obliged to consider the Kurta Memo when the Board decided Plaintiff's petition and that it failed to apply it properly. *See Bates v. Long Island R. Co.*, 997 F.2d 1028, 1038 n. 4 (2d Cir. 1993)("… the doctrine seeks to preserve the sanctity of the oath by demanding absolute truth and consistency in all sworn positions. Preserving the sanctity of the oath prevents the perpetuation of untruths which damage public confidence in the integrity of the judicial system.") (footnote omitted).

As Plaintiff notes, a plaintiff qualifies as a prevailing party when the plaintiff secures remand to the agency because of an admitted error by the agency and without regard to the ultimate disposition upon rehearing by the agency where the Court has not retained jurisdiction. *Thompson v. Shinseki*, 682 F.3d 1377, 1381 (Fed. Cir. 2012). Here, Plaintiff is a prevailing party because he obtained an enforceable judgment on the merits that granted the alternative relief sought in the prayer and the Court did not retain jurisdiction over the remand.

Defendant argues that although Plaintiff obtained a judgment against the Defendant, he did not prevail because "[s]imply put, the motion to remand would not have occurred if it were not for Defendant seeking to have the BCNR panel apply new policy, the final and signed Kurta Memo and the Wilkie Memo, to Plaintiff's petition." [Def. Mem. in Opp'n at 15](citing *Small v. United States*, 130 Fed. Cl. 88 (2016)). The Defendant is correct in that agency remand to consider new legal authority enacted while the case is on appeal does not constitute securing

relief on the merits. *Former Employees of Motorola Ceramic Prod. v. United States*, 336 F.3d 1360, 1366 (Fed. Cir. 2003).

In *Small*, the veteran-plaintiff sought and was granted remand to the Army Board for Correction of Military Records after the Hagel Memo was promulgated for the board to consider applicability of the policy change. 130 Fed. Cl. at 106-8 (2016). Here, Plaintiff was entitled to have his petition considered under the standards set forth in the Kurta Memo in the first instance because the memo was applicable when his petition was decided. The court in *Small* distinguished the case from those where the remand was to correct an established agency error, which is the case here. *Id.* at 107. Any benefit that Plaintiff may receive from subsequent policy developments, including the Wilkie Memo, is incidental to the judicial relief sought to remedy the admitted legal error. The Wilkie Memo did not serve as the basis for remand and the Court's decision granting Defendant's motion does not reference the Wilkie Memo for this reason.

Accordingly, the Court holds that Plaintiff is the prevailing party. He is therefore entitled to reasonable attorneys' fees unless the Defendant can establish that its position was "substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A).

B. <u>Whether the Defendant's position was substantially justified.</u>

Because Plaintiff satisfied the threshold issue of showing that he is the prevailing party, the Defendant "bears the burden of showing that [its] position was 'substantially justified,' which the Supreme Court has construed to mean 'justified to a degree that could satisfy a reasonable person.' " *Ericksson v. Comm'r of Soc.*

*Sec.*, 557 F.3d 79, 81 (2d Cir. 2009) (quoting *Pierce v. Underwood*, 487 U.S. 552, 565, (1988).

"[I]t is well-established that the Government's prelitigation conduct or its litigation position could be sufficiently unreasonable by itself to render the entire Government position not 'substantially justified.' " *Healey v. Leavitt*, 485 F.3d 63, 67 (2d Cir. 2007) (quotation marks and citation omitted); *Smith v. Bowen*, 867 F.2d 731, 734 (2d Cir. 1989) ("Congress made clear that for EAJA purposes, a court should inquire into both the underlying agency determination affecting the party, as well as the Government's litigation strategy in defense of that determination.").

Defendant's position is that its underlying administrative decision had a reasonable basis in fact and law because the Board applied a draft version of the Kurta Memo based on Lt. Col. Yager's training and granted Plaintiff partial relief. [Def. Mem. in Opp'n at 16-17]. However, as Plaintiff argues, Defendant is essentially raising a harmless error argument based on new facts contained in Ms. Caldie's affidavit and Defendant's shifting position on the applicability of the Kurta Memo. [Pl. Repl. Br. at 8-9]. The Court agrees with Plaintiff.

There is no way for the Court to determine whether the error was harmless because the affidavit provides scant details about the training and the training materials are not part of the administrative record and were not supplied by Defendant in opposition to Plaintiff's motion. *Id*. Moreover, the Board's decision stated inaccurately or falsely that it applied the Kurta Memo when deciding Plaintiff's petition. Even after Plaintiff's petition was heard and before it issued its

written decision, the Board refused to revisit its decision after Plaintiff sent a supplemental memorandum arguing the standards set forth in the Kurta Memo.

While the Defendant promptly moved for remand, the Board's decision below falls short of what a reasonable person would expect of the government when conducting this non-adversarial proceeding. A reasonable person would expect the Board to revisit its decision after it became aware of the Kurta Memo's promulgation to ensure that its understanding of the intention of the anticipated policy comported with the new policy. Instead, the Board's written decision obfuscates the record by claiming that it considered a policy that was not before it when it rendered the decision.

Accordingly, the Government's position was not substantially justified. The Court must now turn to whether equitable considerations militate against awarding Plaintiff prevailing party attorneys' fees.

C. **Whether special circumstances exist to make awarding EAJA fees and expenses unjust.**

Defendant argues that it can avail the safety valve exception for instances where special circumstances would make awarding fees unjust. [Def. Mem. in Opp'n at 18]. Defendant argues, again, that the Board applied the principles of the Kurta Memo and granted partial relief. *Id*. Defendant further argues that it identified and raised the defect, which ultimately led to its uncontested motion for remand. *Id*. In reply, Plaintiff argues that the government has "consistently failed to address Mr. Morant's claims in a straight-forward and plainspoken manner. Instead, it has provided false and rotating explanations," which forced Plaintiff to obtain counsel and seek judicial review. [Def. Repl. Br. at 10]. Plaintiff further argues that his legal

team has already written off many hours of attorney time and is seeking remuneration at a below-market rate. *Id.* The Court agrees with Plaintiff.

The safety valve exception directs courts to apply traditional equitable principles in considering whether to deny awards where the remuneration would be unjust. *United States v. 27.09 Acres of Land, More or Less, Situated in Town of Harrison & Town of N. Castle*, 43 F.3d 769, 772 (2d Cir. 1994). Courts consider situations where attorneys' fees were "expended on discrete efforts that achieved no appreciable advantage, and where the claim of the prevailing parties' rests largely on a result to which the claimant made no contribution," i.e. where the prevailing party is nominal or passive or free riding on the litigation efforts of others. *Id.* at 773-75.

Mistakes happen. Congress recognized this when it enacted the EAJA to provide an exception to the United States' sovereign immunity "to eliminate the barriers that prohibit small businesses and individuals from securing vindication of their rights in civil actions and administrative proceedings brought by or against the Federal Government." *Scarborough v. Principi*, 541 U.S. 401, 406 (2004) (quoting H.R. Rep. No. 96–1005, at 9H.R. Rep. No. 96–1005, at 9 (1980)).

The issue here is whether equitable considerations preclude Plaintiff from remuneration for legal expenses incurred for seeking validation of his rights. While Defendant argues that the error was minor, the failure to apply the correct legal standard in the first instance means that Plaintiff may have been wrongfully denied a discharge upgrade to which he may have been entitled in 2017. As alleged in the complaint, a veteran's Character of Service affects their eligibility for benefits and

support services offered by the U.S. Department of Veterans Affairs, state veterans departments, and private organizations. [Compl. ¶¶ 15, 84]. A veteran's Character of Service and narrative reasons for separation also affect job prospects and is stigmatizing. *Id.* ¶¶ 16, 85, 102. Here, the Board's previously acknowledged error necessitated Plaintiff's retention of counsel and the filing of this action to seek redress.

The error would not have been identified if the suit was not filed. Indeed, the Board's decision inaccurately claimed that it applied the Kurta Memo. Had Plaintiff not retained counsel and filed this action, the mistake would likely have gone undetected as the Board's decision would convince a lay person that the Kurta Memo was in fact considered. When Defendant promptly and appropriately brought the error to the Plaintiff and the Court's attention, it truncated the litigation by conceding an issue that it would not have been "substantially justified" in continuing to litigate. In effect, Defendant reduced the United States' potential exposure to attorneys' fees. This is not a case where the prevailing plaintiff free-rode on the efforts of a joined party or secured a pyrrhic victory by prevailing on a minor issue while losing on the gravamen of the claims.

Accordingly, there are no equitable factors that militate against awarding Plaintiff attorneys' fees.

### Conclusion

For the above-mentioned reasons, the Court concludes that Plaintiff was a qualified prevailing party and Defendant's position was not "substantially

justified." 28 U.S.C. § 2412(d). There are no special circumstances that make awarding attorneys' fees pursuant to the EAJA unjust.

Defendant does not object to Plaintiff's proposed inflation-adjusted hourly rate of $206.42. [Pl. Mem. in Supp. at 6]. Plaintiff's counsel represents that it has voluntarily reduced the number of hours requested and eliminated redundancies. *Id*. Plaintiff's request only includes attorney time spent in preparation and work on Plaintiff's civil action. *Id*. at 6-7. Defendant does not object to the reasonableness of the amount of time spent on the litigation and does not challenge any billing entries. The Court has reviewed Plaintiff's counsel's proposed rate, itemized bill, and amount of time requested for preparing the reply brief to Defendant's opposition to Plaintiff's motion for EAJA fees. The Court deems the fee request reasonable considering the relative complexity of this case, the thoroughness of Plaintiff's filings, and the results obtained.

The Court GRANTS Plaintiff's motion and awards $34,926.26 in attorneys' fees and $43.04 in expenses pursuant to the EAJA.

IT IS SO ORDERED

_____/s/_____

Hon. Vanessa L. Bryant
United States District Judge

Dated at Hartford, Connecticut: March 1, 2021